# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KONSTANTINOS SGAGIAS,** | : | **CIV NO. 1:24-CV-1632** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **NEWBERRY TOWNSHIP POLICE** | : | |
| **DEPARTMENT, et al.** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

## I.    Statement of Facts and of the Case

Since initiating this case in September of 2024, the *pro se* plaintiff in this case, Konstantinos Sgagias, has filed at least four versions of his complaint. In his third amended complaint,[1] Sgagias brings civil rights claims under 42 U.S.C. § 1983 against two institutional defendants, York County and Newberry Township Police Department, as well as the York County District Attorney, David Sunday, and a Newberry Township police officer, Lieutenant Braxton Ditty. (Doc. 22). He also

---

[1] The plaintiff's filing of various complaints without leave of court runs afoul of Rule 15(a) which authorizes a party to amend his pleading *once* as a matter of course within 21 days after serving it, or 21 days after service of a dispositive motion or responsive pleading, whichever is earlier, Fed.R.Civ.P. 15(a)(1)(A) and (B), and "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent, or the court's leave," which courts are to freely give "when justice so requires," Fed.R.Civ.P. 15(a)(2). Nonetheless, since the defendants have directed their motions to dismiss at the third amended complaint, we treat this most recent pleading, (Doc. 22), as the operative pleading in this case.

alleges a pendant state law conversion claim against the Newberry Township Police Department and Lieutenant Ditty. (Id.)

According to the complaint Sgagias' claims originate from his 2018 purchase of a York County property at a tax sale which had previously operated as an automotive salvage yard. (Doc. 22, ¶¶ 9-10). Prior to the plaintiff taking possession of the property in 2022, Sgagias alleges that the former proprietor of the salvage company, Emeka Kinglsey Oguejiofor, abandoned a 2015 Chevrolet Camaro on the property. (Id. ¶¶ 10-13). Though not entirely clear from the face of the complaint, it appears a legal battle ensued over whether Oguejiofor had abandoned the Camaro and who was its rightful owner. (Id., ¶¶ 13-15). According to the plaintiff, he legally possessed the Camaro pursuant to several Pennsylvania court orders.[2] (Id.)

On September 28, 2022, officers of the Newberry Township Police Department, under the direction of Defendant Lieutenant Braxton Ditty, entered Sgagias' property to conduct a VIN check on the Camaro at which time Sgagias alleges he presented the officers with the court orders proving the vehicle was forfeited and lawfully in his possession. (Id., ¶¶ 16-17). Despite this documentation,

---

[2] The attached exhibits that the plaintiff purports confirm his claims that he legally possessed the vehicle are enigmatic in nature and, in our view, evidence only that Oguejiofor and Sgagias were in a legal battle over its ownership. As required when considering a motion to dismiss, we recite the facts of the complaint, accepting them as true. However, given the ongoing state court litigation over this issue, we do not reach any conclusion on whether Sgagias in fact has a legal claim to the Camaro.

the officers removed the vehicle from the plaintiff's property and returned it to Oguejiofor. (Id., ⁋ 18). A few months later, on December 27, 2022, Lieutenant Ditty charged the plaintiff with misdemeanor unauthorized use of a vehicle. (Id., ⁋ 19). This charge remains pending against Sgagias in the Court of Common Pleas of York County. See Commonwealth v. Konstantinos G. Sgagias, Docket No. CP-67-CR-0000001978-2023 (Pa. Com. Pl. – York Cnty.).

Despite this case remaining unresolved in state court, in September 2024, Sgagias filed his complaint in federal court, alleging the defendants violated his constitutional rights and committed state law torts when they removed the vehicle from his property and initiated criminal charges against him. Against defendants Ditty and Newberry Township Police Department he alleges constitutional violations of due process, false arrest, unlawful seizure, and a state law conversion claim. (Doc. 22, ⁋⁋ 34-54). He also lodges an abuse of process claim against Defendant Ditty. (Id.) As to the York County defendants, he alleges violations of due process and attempts to impute liability upon York County for his claims against the police department and district attorney's officer under Monell v. Department of Social Services, 436 U.S. 658 (1978).

The defendants have now moved to dismiss the plaintiff's third amended complaint, arguing both that his claims fail as a matter of law and that this Court

should abstain from ruling on the issues under the <u>Younger</u>[3] abstention doctrine, since the state criminal case against Sgagias is ongoing. This case was reassigned to the undersigned on September 4, 2025. The parties have consented to magistrate judge jurisdiction and these motions are fully briefed and ripe for disposition. (Docs. 25, 28, 32, 35, 36, 38, 39).

After a review of the pleadings in this case, we find the plaintiff's complaint runs afoul of several well-settled tenets that guide our analysis of this case. At the outset, the institutional defendants in this case are either not proper defendants under § 1983 or plaintiff has failed to allege their requisite personal involvement to impute constitutional liability upon them for any alleged wrongdoing. Moreover, since a resolution of the plaintiff's federal constitutional claims would necessarily involve this Court opinion on matters which are currently unresolved in state court, we are empowered to abstain from ruling on any of the plaintiff's claims under <u>Younger</u> pending the outcome of his criminal case. Accordingly, we will dismiss the constitutional claims against the York County defendants and the Newberry Township Police Department and stay the claims against Defendant Lieutenant Braxton Ditty and the pendant state law claims pending the outcome of the plaintiff's state criminal case.

---

[3] <u>Younger v. Harris</u>, 401 U.S. 37, 41 (1971).

II.    <u>Discussion</u>

A. <u>Motions to Dismiss—Standard of Review.</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

6

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain

more than mere legal labels and conclusions; it must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in Iqbal. The
> plausibility standard requires the complaint to allege "enough facts to
> state a claim to relief that is plausible on its face." Twombly, 550 U.S.
> at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard
> when the factual pleadings "allow[ ] the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged." Iqbal,
> 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955).

> This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861, 182 L.Ed.2d 644 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.

2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is against these legal guideposts that we assess the legal sufficiency of this complaint.

## A. **The Plaintiff Has Not Alleged a Monell Claim Against York County.**

At the outset, the plaintiff has named York County as a defendant in this case but has alleged no wrongdoing on the part of the county. Instead, he attempts to impute liability on the county for the alleged wrongdoing of the Newberry Township Police under Monell. On this score, it is well settled that local governmental entities may not be held liable under § 1983 for the acts of others under a theory of *respondeat superior* or vicarious liability. Iqbal, 556 U.S. 662; see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). Instead, such an agency may only be held liable "when execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

Thus, to sustain a claim against this institutional defendant, a plaintiff must "identify a . . . policy or custom that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997) (quotations omitted). A plaintiff can adequately allege a policy or custom establishing institutional liability for the acts committed by its employees by showing a formal policy, a specific injury-causing action taken by a government official, a practice so widespread it had become a custom, or a widespread failure to train or supervise subordinates. See Ashley v. Kosehba, No. 1:22-CV-00982, 2023 WL 6200805, at *4 (M.D. Pa. Sept. 22, 2023). Once this policy or custom has been established, the plaintiff must also allege "that it was the proximate cause of his injuries by demonstrating a plausible nexus or affirmative link between the municipality's policy or custom and the specific harm sustained." Hargrove v. City of Philadelphia, No. CV 21-4082, 2023 WL 3229927, at *6 (E.D. Pa. May 3, 2023) (citing Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990); Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019)) (quotations omitted).

Further, in this case the plaintiff is attempting to establish Monell liability based upon a single incident. This is exceedingly difficult. As we have observed:

[W]hile it is sometimes possible "to establish deliberate indifference based on a single incident[,] this showing is available in a very narrow range of circumstances." Peters v. Cmty. Educ. Ctrs., Inc., No. 11-850, 2014 WL 981557, at *9 (E.D. Pa. Mar. 13, 2014). "To find deliberate indifference from a single-incident violation," the risk of injury must be a "highly predictable consequence" of the municipality's failure to train and supervise its employees. Thomas, 749 F.3d at 225 (quoting Connick, 563 U.S. at 63-64). Thus, "[l]iability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.' " Id. at 223-24 (quoting Bryan Cnty., 520 U.S. at 409).

Even if that showing can be made, the plaintiff still must demonstrate that the failure to train "proximately caused his constitutional injury by identifying a particular failure in a training program that is 'closely related to the ultimate injury.' " Buoniconti v. City of Phila., 148 F. Supp. 3d 425, 441 (E.D. Pa. 2015) (quoting Canton, 489 U.S. at 391). Furthermore, a municipality can only be liable under § 1983 where the failure to train "demonstrates a 'deliberate' or 'conscious' choice by the municipality." Doe v. Luzerne Cnty., 660 F.3d 169, 179 (3d Cir. 2011). "To determine whether a municipality's alleged failure to train its employees amounted to a deliberate or conscious choice, it must be shown that '(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice was made by an employee will frequently cause deprivation of constitutional rights.' " Id. at 179-80 (citing Carter, 181 F.3d at 357).

Tucker v. Petruzzi, No. 3:17-CV-1848, 2018 WL 3623766, at *7 (M.D. Pa. June 27, 2018), report and recommendation adopted, No. 3:17-CV-1848, 2018 WL 3622772 (M.D. Pa. July 30, 2018)

Judged against these standards, the plaintiff's complaint fails to state a claim against York County. First, as the defendants point out, York County simply does not control the policies or practices of the Newberry Township Police Department which, as a municipal police department, operates independently of the York County Detective Bureau. <u>See</u> 16 Pa. C.S.A. §§ 14302, 14340. Moreover, the plaintiff has not identified any policy or practice that caused his injury, alleging only in a conclusory fashion that York County's failure to train, supervise, and implement policies led to the violation of his rights. (Doc. 22, ⁋ 57). As we have noted, to survive a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678. Since the plaintiff has not identified any policy or practice which would impute liability upon York County for these alleged violations, the motion to dismiss will be granted as to York County.

## B. <u>The Plaintiff May Not Sue the York County District Attorney for Prosecuting Him.</u>

Sgagias' claims against the York County District Attorney, David Sunday, also fail. The plaintiff alleges that the District Attorney allowed and perpetrated an unlawful prosecution against him despite evidence affirming his legal ownership of the Camaro. He also alleges that the York County District Attorney's Office failing to prosecute his complaint while pursuing charges against him is evidence of selective prosecution.

To the extent the plaintiff asks this court to hold the York County District Attorney liable for its decision not to prosecute his complaint, it is well established that decisions regarding the filing of criminal charges are the prerogative of the executive branch of government, are cosigned to the sound discretion of prosecutors, and under the separation of powers doctrine are not subject to judicial fiat. Indeed, it has long been recognized that the exercise of prosecutorial discretion is a matter "particularly ill-suited to judicial review." Wayte v. United States, 470 U.S. 598, 607 (1985). Recognizing this fact, courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third party, finding that civil plaintiffs lack standing to make such claims and concluding that such relief simply is unavailable in a civil lawsuit. See, e.g., Ostrowski v. Mehltretter, 20 F. App'x 87, 90 (2d Cir. 2001); Kim v. Romero, 877 F.2d 64, 1989 WL 67116 at *1 (9th Cir. June 14, 1989) (affirming the dismissal of a suit against various prosecuting authorities for their failure to bring charges against a sheriff for alleged battery); McMinn v. Damiani, 765 F. 2d 145, 1985 WL 13323 (6th Cir. May 3, 1985) (affirming the dismissal for lack of standing in a *pro se* civil rights case where plaintiff had sued state prosecuting authorities for failing to investigate or prosecute claims against various state judges and lawyers); Klein v. Met Ed, No. 3:19-CV-725, 2020 WL 94077, at *5 (M.D. Pa. Jan. 8, 2020); Gessner v. Dep't of Corr., No. 3:14-CV-111, 2014 WL 972290, at *6 (M.D. Pa. Mar.

12, 2014). Simply put, Sgagias may not use a civil lawsuit as the vehicle for compelling a criminal prosecution. Therefore, this claim for relief is improper and must be dismissed.

Moreover, any constitutional complaint by the plaintiff's that his prosecution was unlawful would require Sgagias to show the criminal case against him terminated in his favor.[4] But Sgagias cannot so claim since the criminal case against him in state court is ongoing. Thus, it appears that the plaintiff is suing the York County District Attorney for the very act of prosecuting him.

This he may not do.

The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20

---

[4] A claim of malicious prosecution requires a plaintiff to show: (1) the defendants initiated a criminal proceeding; (2) *the criminal proceeding ended in plaintiff's favor;* (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) (emphasis added).

(grand jurors); <u>Harper v. Jeffries</u>, 808 F.2d 281, 284 (3d. Cir. 1986) (parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

Indeed, it is well-settled that a criminal defendant may not sue prosecutors for the act of filing charges against him since such conduct is cloaked in immunity from civil liability. The immunity conferred upon prosecutors for the quasi-judicial act of filing and bringing criminal charges is also broad and sweeping:

> [T]he Supreme Court [has] held that state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role. This immunity extends to acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and ... presenting the State's case." [The] Court has noted numerous public policy considerations underlying its extension of absolute immunity to prosecutors: [S]uits against prosecutors for initiating and conducting prosecutions "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate"; lawsuits would divert prosecutors' attention and energy away from their important duty of enforcing the criminal law; prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity; and potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." ... [T]here are other checks on prosecutorial misconduct, including the criminal law and professional discipline.

<u>Yarris v. County of Delaware</u>, 465 F.3d 129, 135 (3d Cir. 2006) (citations omitted).

Here, we find that Sgagias' complaint seeks to hold the York County District Attorney personally liable for supervising and ratifying the actions of the police

officer defendant. However, since he is immune from personal, individual liability for his actions in bringing this criminal case, these claims against Defendant Sunday fail as a matter of law.

**C. Newberry Township Police Department Is Not a Proper §1983 Defendant**

In his federal civil rights complaint, Sgagias also names the Newberry Township Police Department as an institutional defendant and seeks damages from this agency for alleged federal civil rights violations. But Sgagias' claims against the police department as an institution run afoul of a longstanding and insurmountable legal obstacle. It has long been held that a police department is not a proper institutional defendant under the federal civil rights statute, 42 U.S.C. § 1983, since police departments serve only as an administrative arm of a municipality, and it is a municipality through which any liability must flow to the police department. Indeed, it has been repeatedly held that a police department is not a "person" for purposes of § 1983 and therefore is not a proper defendant in a § 1983 action. McCreary v. Owen, No. 1:21-CV-1022, 2021 WL 11114949, at *6–7 (M.D. Pa. Dec. 6, 2021), report and recommendation adopted, No. 1:21-CV-01022, 2021 WL 11114480 (M.D. Pa. Dec. 28, 2021); Blackwell v. Middletown Borough Police Dep't, 1:12-CV-825, 2012 WL 6012568 (M.D. Pa. Nov. 16, 2012), report and recommendation adopted, 1:12-CV-825, 2012 WL 6002689 (M.D. Pa. Nov. 30, 2012) (citing Golya v. Golya, 2007 WL 2301085, *9, 2007 U.S. Dist. LEXIS 58093 (M.D. Pa. 2007)) (explaining that

courts within the Third Circuit have concluded that a police department is merely a sub-unit of the local government and is not amenable to suit under § 1983)); Wivell v. Liberty Township Police Dept., 2007 WL 2155540, *2, 2007 U.S. Dist. LEXIS 54306 (M.D. Pa. 2007) (explaining that police department not subject to suit in a § 1983 action); Mitros v. Cooke, 170 F.Supp.2d 504, 507 (E.D. Pa. 2001) (city police department is a sub-unit of the city government that is merely a vehicle through which the city fulfills its policing functions, and is not a separate entity for purposes of suit); Tobin v. Badamo, 3:00CV783, 2000 WL 1880262 (M.D. Pa. Dec. 20, 2000) (municipal police department is not a proper party to a section 1983 action because it is merely a subunit of the city and not a separate corporate entity); McMahon v. Westtown-East Goshen Police Dept., No. Civ.A. 98-3919, 1999 WL 236565 at *4, 1999 U.S. Dist. LEXIS 5551 at *4 (E.D. Pa. Apr. 22, 1999) (citing Johnson v. City of Erie, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993) and Agresta v. City of Philadelphia, 694 F. Supp. 117, 119 (E.D. Pa. 1988)); Johnson v. City of Erie, Pa., 834 F. Supp. 873, 879 (W.D. Pa. 1993).

In light of this consistent case law rejecting efforts to name local departments as institutional defendants in § 1983 actions, the constitutional claims against this institutional defendant must be dismissed.

### D.  **The Court Will Not Interfere in an Ongoing State Criminal Case**

Finally, all of the claims in Sgagias' complaint invite this Court to interfere in

a pending state criminal case, running afoul of a settled tenet of federal law, the Younger abstention doctrine.

The Younger abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: *"*Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding. See Younger v. Harris, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.')." Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is guided by these same principles in its application. The Supreme Court has recently narrowed the scope of Younger, employing courts first to determine whether the parallel state action falls within one of "three exceptional categories" which trigger Younger abstention: (1) criminal prosecutions, (2) "certain civil enforcement proceedings," and (3) "civil proceedings involving certain orders uniquely in furtherance of the state court's ability to perform their judicial functions." Harmon v. Dep't of Fin., 811 Fed. Appx. 156, 157 (3d Cir. 2020) (citing Sprint Commc'ns, Inc. v. Jacobs, 571

18

U.S. 69, 79, 134 S. Ct. 584, 592, 187 L. Ed. 2d 505 (2013)).

Once it is established the parallel action falls within a category to which Younger applies, courts are directed to consider three additional factors[5] in determining whether abstention is appropriate. Malhan v. Sec'y United States Dep't of State, 938 F.3d 453, 456 (3d Cir. 2019). As the United States Court of Appeals for the Third Circuit has observed:

> Abstention under Younger is appropriate only if (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. See Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); Kentucky West Virginia Gas Co., 791 F.2d at 1116. Even if the necessary three predicates exist, however, Younger abstention is not appropriate if the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted. See Middlesex, 457 U.S. at 435, 102 S.Ct. at 2523; Younger, 401 U.S. at 49–50, 53–54, 91 S.Ct. at 753, 755.

Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989)

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult

---

[5] These factors were established by the Supreme Court in Middlesex County Ethics Comm. v. Garden State Bar Assn., 457 U.S. 423, 433-434 (1982) and are referred to as Middlesex factors.

Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with ongoing state cases. Id.; Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In this case, the plaintiff's *pro se* complaint reveals that all of the legal prerequisites for Younger abstention are present here. First, Sgagias is subject to a criminal prosecution in state court for a misdemeanor charge, placing these parallel proceedings within the purview of Younger. Moreover, it is evident that there are ongoing state criminal proceedings in this case as Sgagias is currently awaiting the resolution of  charges of unauthorized use of a motor vehicle relating to his possession of the Camaro.

It is also apparent that those proceedings afford Sgagias a full and fair opportunity to litigate the issues raised in this lawsuit in his pending state case. In fact, in his state proceedings, Sgagias will have the opportunity to present the evidence he has attached to his complaint to the state court which can then make the determination whether he was rightfully in possession of the vehicle at the time he was charged. He will also have the opportunity to bring his discovery challenges before the state court, which is better equipped to rule on such matters in its ongoing proceedings. For this Court to opine on these issues would clearly supplant the jurisdiction of the state court to rule on these issues leading up to trial. Moreover,

the burden rests on Plaintiff to show that state procedural law bars presentation of his claims, <u>Lazaridis v. Wehmer</u>, 591 F.3d 666, 670-71 (3d Cir. 2010) (quoting <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 14–15 (1987)), a burden Sgagias has failed to meet.

Finally, it is clear that the state proceedings implicate important state interests, since this matter involves state criminal law enforcement, an issue of paramount importance to the state. <u>See</u> <u>Harmon</u>, 811 F. App'x at 157 (3d Cir. 2020); <u>Rex v. Fisher</u>, No. 12-CV-04045, 2012 WL 3537846, at *2 (E.D. Pa. August 15, 2012); <u>Arndt v. Pennsylvania</u>, No. 3:11-CV-00856, 2011 WL 3876161, at *2 (M.D. Pa. August 31, 2011). Indeed, such abstention is particularly appropriate here, in a case where the plaintiff's principal claims include is a false arrest and malicious prosecution. It is well-settled that:

> To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) *the criminal proceeding ended in plaintiff's favor;* (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *See Donahue,* 280 F.3d at 379–80.

<u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003) (emphasis added). Since an essential element of a malicious prosecution claim is the favorable termination of the state prosecution for the plaintiff, the outcome of this state criminal case dictates the ability of Sgagias to pursue this particular claim.

Moreover, the state court's review of the evidence in this case will inform issues of probable cause, an essential element to any false arrest claim. See Pino v. Carey, No. 3:15-CV-1172, 2016 WL 8849028, at *6 (M.D. Pa. Dec. 16, 2016), report and recommendation adopted, No. CV 3:15-1172, 2017 WL 1541792 (M.D. Pa. Apr. 28, 2017) (citing Groman v. Twp. Of Manalpan, 47 F.3d 628, 634 (3d Cir. 1995) ("[I]n order to make out a false arrest claim, a plaintiff must demonstrate that police lacked probable cause to arrest"). In this setting, deferring the federal lawsuit until the state criminal case has concluded is not only advisable; it is absolutely necessary.

Since the legal requirements for Younger abstention are fully met here, and Sgagias has not established that he is entitled to any bad faith or extraordinary circumstances which entitle him to an exception, the decision to abstain rests in the sound discretion of this court. Lui, 369 F.3d at 325. Given the important state interest in enforcement of its criminal laws and recognizing that the state courts are prepared to fully address the merits of this matter, we believe that the proper exercise of this discretion weighs in favor of abstention at the present time. Id.; Zahl, 282 F.3d 204.[6]

Nonetheless, in abstaining from ruling on the plaintiff's claims at this juncture, we do not foreclose the opportunity for the plaintiff to continue pursuing

---

[6] Similarly, the plaintiff's requests for preservation of evidence and request to produce documents, (Docs. 44-46), will be denied at this time as these matters are more appropriately directed at the state court, without prejudice to the plaintiff renewing these requests at such time as the stay is lifted.

this case following the conclusion of the case against him in state court. Accordingly, although we find York County, Newberry Township Police Department, and the York County District Attorney David Sunday are simply inappropriate constitutional defendants and the constitutional claims against these parties will be dismissed, the remaining claims against Defendant Lieutenant Braxton Ditty and Sgagias' state law tort claim of conversion against the Lieutenant and the police department, [7] shall be stayed pending the outcome of Sgagias' state criminal case.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Date: September 12, 2025

---

[7] While the Pennsylvania Political Subdivision Torts Claims Act (PSTCA) grants broad immunity to municipalities for the intentional torts of their employees, 42 Pa. C.S.A. §§ 8541-8564; Dull v. W. Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 754 n.10 (M.D. Pa. 2009), our sister court has held that conversion is not necessarily an intentional tort and, depending on the circumstances, could fall within a Tort Claims Act exception. Conner v. Borough of Eddystone, Penn., No. CIV.A. 14-06934, 2015 WL 1021363, at *6 (E.D. Pa. Mar. 6, 2015) (citing L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc., 777 A.2d 1090, 1095 (Pa. Super. Ct. 2001); 42 Pa.C.S. § 8542(b)(2)). Accordingly, out of an abundance of caution, we decline to outright dismiss this claim against the police department at this juncture to allow briefing on this issue once the stay is lifted.