## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KONSTANTINOS SGAGIAS,** | : | **CIV NO. 1:24-CV-1632** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **NEWBERRY TOWNSHIP POLICE** | : | |
| **DEPARTMENT, et al.** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.     Statement of Facts and of the Case

The *pro se* plaintiff in this case, Konstantinos Sgagias, is a prodigious litigant who has filed at least four versions of his complaint since initiating this case in September of 2024. (Docs. 1, 7, 8, 22). Despite his repeated attempts to revise and refine his complaint, often without leave of court, we previously found that he has failed to state a claim against most of the defendants upon which relief may be granted. Nonetheless, in his latest filings, Sgagias now moves for leave to file fourth and fifth amended complaints and asks the Court to lift the stay on his proceedings since the state case against him, which forms part of the basis of his claims, has terminated in his favor. (Docs. 49, 59).

By way of background, Sgagias' claims originate from his 2018 purchase of a York County property at a tax sale which had previously operated as an automotive

1

salvage yard. (Doc. 22, ¶¶ 9-10). Prior to the plaintiff taking possession of the property in 2022, Sgagias alleges that the former proprietor of the salvage company, Emeka Kinglsey Oguejiofor, abandoned a 2015 Chevrolet Camaro on the property. (Id. ¶¶ 10-13). Though not entirely clear from the face of the complaint, it appears a legal battle ensued over whether Oguejiofor had abandoned the Camaro and who was its rightful owner. (Id., ¶¶ 13-15). According to the plaintiff, he legally possessed the Camaro pursuant to several Pennsylvania court orders.[1] (Id.)

On September 28, 2022, officers of the Newberry Township Police Department, under the direction of Defendant Lieutenant Braxton Ditty, entered Sgagias' property to conduct a VIN check on the Camaro at which time Sgagias alleges he presented the officers with the court orders proving the vehicle was forfeited and lawfully in his possession. (Id., ¶¶ 16-17). Despite this documentation, the officers removed the vehicle from the plaintiff's property and returned it to Oguejiofor. (Id., ¶ 18). A few months later, on December 27, 2022, Lieutenant Ditty charged the plaintiff with misdemeanor unauthorized use of a vehicle. (Id., ¶ 19).

---

[1] We did not previously reach the issue of whether Sgagias had legal claim to the Camaro due to the ongoing state court litigation. The exhibits attached to his previous complaint were enigmatic in nature and, at best, showed only that Oguejiofor and Sgagias were in a legal battle over its ownership. His latest motion attaches the title to the Camaro which, despite Sgagias' claim to the contrary, names Oguejiofor as title owner.

In September 2024, Sgagias filed his complaint in federal court, alleging the defendants violated his constitutional rights and committed state law torts when they removed the vehicle from his property and initiated criminal charges against him. Against Defendants Ditty and Newberry Township Police Department he alleged constitutional violations of due process, false arrest, unlawful seizure, and a state law conversion claim. (Doc. 22, ¶¶ 34-54). He also lodged an abuse of process claim against Defendant Ditty. (Id.) As to the York County defendants, he alleged violations of due process and attempted to impute liability upon York County for his claims against the police department and district attorney's officer under Monell v. Department of Social Services, 436 U.S. 658 (1978). At the time Sgagias filed his complaint, his case remained unresolved in state court.

In January 2025, the defendants moved to dismiss the plaintiff's third amended complaint, arguing both that his claims failed as a matter of law and that this Court should abstain from ruling on the issues under the Younger[2] abstention doctrine, since the state criminal case against Sgagias was ongoing. (Docs. 25, 28, 35). On September 12, 2025, this Court dismissed the constitutional claims against the York County defendants and the Newberry Township Police Department and stayed the claims against Defendant Lieutenant Braxton Ditty and the pendant state

---

[2] Younger v. Harris, 401 U.S. 37, 41 (1971).

law claims against the police department pending the outcome of the plaintiff's state criminal case.

One week later, on September 19, 2025, Sgagias filed the instant motion for leave to file a fourth amended complaint which adds three new defendants – Chief Deputy District Attorney John Hamme, Assistant District Attorney Virginia Hobbs, and the current acting York County District Attorney Tim Barker – and reasserts claims against the previously dismissed defendants Newberry Township, York County, and District Attorney David Sunday, Jr., as well as Lt. Braxton Ditty. (Doc. 49-1). The proposed amended complaint also adds a cause of action under the Resource Conservation and Recovery Act (RCRA). (Id.) The plaintiff argues the Court should grant him leave to file a fourth amended complaint because of newly available evidence, including the title to the Camaro which names Oguejiofor as the owner, bodycam footage of his arrest,[3] a criminal docket revealing "a fabricated 'military leave' continuance," prosecutorial turnover, commercial insurance losses, and new environmental claims. (Doc. 49).

Since Sgagias submitted his proposed fourth amended complaint to the Court, he has informed us that he was acquitted on all charges on November 5, 2025. (Doc. 59; Commonwealth v. Konstantinos G. Sgagias, Docket No. CP-67-CR-

---

[3] The plaintiff purports that the bodycam footage captures Lt. Ditty instructing subordinates to attempt to interview Sgagias and secure a confession to the crime with which he was charged.

0000001978-2023 (Pa. Com. Pl. – York Cnty.). Thus, the state proceedings, the ongoing nature of which led the Court to abstain from ruling on some of Sgagias' claims, have terminated in his favor. Sgagias now moves the Court to lift the stay on some of his claims but also requests leave to submit a fifth amended complaint, despite this Court not yet approved his fourth amended complaint. (Id.) However, the plaintiff has not attached a proposed fifth amended complaint to his motion.

In consideration of the foregoing, and in the interest of providing a resolution to this strange and protracted litigation, for the reasons set forth below we will deny the plaintiff's motion for leave to file a fourth amended complaint, (Doc. 49), and deny his newest motion to file a fifth amended complaint but grant this motion to the extent it asks the court to lift the stay on his surviving claims against Lt. Ditty and the Newberry Township Police Department. (Doc. 59).

## II. <u>Discussion</u>

### A. <u>Motion to Amend Standard of Review</u>

Motions to amend are governed by Rule 15 of the Federal Rules of Civil procedure, which provides as follows:

**(a) Amendments Before Trial.**

**(1)** *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:

**(A)** 21 days after serving it, or

**(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

**(2)** *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15.

As the text of this rule implies, decisions regarding motions to amend or supplement pleadings rest in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. See e.g., Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001). That discretion, however, is governed by certain basic principles, principles that are embodied in Rule 15 of the Federal Rules of Civil Procedure. Thus, "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust." Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006). Further:

The liberality of Rule 15(a) counsels in favor of amendment even when a party has been less than perfect in the preparation and presentation of a case. See Foman, 371 U.S. at 182, 83 S.Ct. 227; Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938–39 (3d Cir. 1984). It allows for misunderstandings and good-faith lapses in judgment, so long as the party thereafter acts reasonably and diligently.

Id. at 206.

Yet, while Rule 15 provides that leave to amend should be freely given when

justice so requires, the district court still retains broad discretion when ruling upon a motion to amend, Bjorgung, 550 F.3d 263; Cureton, 252 F.3d 267. "Among the grounds that could justify a denial of leave to amend are . . ., bad faith, dilatory motive, prejudice, and futility. 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997); Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir. 1993)) (some quotations omitted). Moreover, a party seeking to supplement pleadings must act in a diligent fashion. Thus, for example, "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint but chose not to resolve them." Krantz v. Prudential Investments Fund Management LLC, 305 F.3d 140, 144 (3d Cir. 2002) (citing Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir. 1998)).

By defining futility for purposes of a motion to amend as failure to state a claim upon which relief could be granted, Rule 15 mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the

complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a ... plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555, 127 S.Ct. 1955. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

Moreover, in undertaking this analysis of a motion for leave to amend a complaint "prejudice to the non-moving party is the touchstone for the denial of an amendment." Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)). However, "[i]n the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." Id. Further, while the burdens of additional discovery are relevant to consideration of whether a proposed amendment results in substantial or undue prejudice, oftentimes, "[g]iven the liberal view towards amendment pleadings embodied in Rule 15, re-opening discovery, rather than forecasting claims, . . . would seem to be the preferable course for addressing these claims of potential prejudice." New Prime, Inc., 2016 WL 3742872, at *4.

### B. **The Plaintiff's Motions to Amend His Complaint Are Denied.**

Judged against these standards, we will deny the plaintiff's motions to file a fourth and fifth amended complaint in this case. Upon review of the plaintiff's proposed fourth amended complaint we conclude that amendment would be futile both because he has failed to meaningfully resolve deficiencies which caused his

most recent operative complaint to fail as to many of the defendants and because his claims against the new defendants fail as a matter of law.

### 1. *The <u>Monell</u> Claims in the Proposed Amended Complaint Fail.*

As to the defendants the Court previously dismissed from this action, amendment of his complaint would be futile because "the plaintiff was put on notice as to the deficiencies in his complaint but chose not to resolve them." <u>Krantz v. Prudential Investments Fund Management LLC</u>, 305 F.3d 140, 144 (3d Cir. 2002) (citing <u>Rolo v. City Investing Co. Liquidating Trust</u>, 155 F.3d 644, 654 (3d Cir. 1998)). Indeed, as to the institutional defendants York County and Newberry Township, against whom the plaintiff's proposed fourth amended complaint renews constitutional claims, it appears the plaintiff simply cannot cure the defects which caused his original claims to fail since these are simply not appropriate defendants in this case.

On this score, the plaintiff has again named York County and Newberry Township as defendants in this case but has alleged no wrongdoing on the part of these defendants. Instead, in stating his claim under <u>Monell</u>,[4] the plaintiff's proposed complaint simply states in a conclusory manner that, "Newberry Township is liable

---

[4] <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)

under <u>Monell</u> because Lt. Ditty, acting as a final policymaker of police operations, directed the unlawful seizures and prosecution of Plaintiff." (Doc. 49-1, at). Similarly, as to York County, he states, "York County is liable through Sunday and Hamme as final policymakers, maintained a custom of misusing prosecutorial authority in civil disputes making his actions attributable to the County under <u>Pembaur v. City of Cincinnati</u>." (<u>Id.</u>) These conclusory statements lay bare Sgagias' attempt to impute liability upon these institutional defendants simply by virtue of the actions of their subordinates. This he may not do. In fact, it is well settled that local governmental entities may not be held liable under § 1983 for the acts of others under a theory of *respondeat superior* or vicarious liability. <u>Iqbal</u>, 556 U.S. 662; <u>see also</u> <u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017, 1027 (3d Cir. 1991). Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Monell</u>, 436 U.S. at 694.

Thus, to sustain a claim against this institutional defendant, a plaintiff must "identify a . . . policy or custom that caused the plaintiff's injury." <u>Bd. of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 403 (1997) (quotations omitted). A plaintiff can adequately allege a policy or custom establishing institutional liability for the acts committed by its employees by showing a formal policy, a

specific injury-causing action taken by a government official, a practice so widespread it had become a custom, or a widespread failure to train or supervise subordinates. See Ashley v. Kosehba, No. 1:22-CV-00982, 2023 WL 6200805, at *4 (M.D. Pa. Sept. 22, 2023). Once this policy or custom has been established, the plaintiff must also allege "that it was the proximate cause of his injuries by demonstrating a plausible nexus or affirmative link between the municipality's policy or custom and the specific harm sustained." Hargrove v. City of Philadelphia, No. CV 21-4082, 2023 WL 3229927, at *6 (E.D. Pa. May 3, 2023) (citing Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990); Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019)) (quotations omitted).

Judged against these standards, the plaintiff's proposed amended complaint still fails to state a claim against York County and Newberry Township. In attempting to cure the deficiencies previously identified by the Court, the plaintiff proposes to impute liability upon York County not through the actions of the Newberry Township Police Department, who we have already explained operates independently of York County, see 16 Pa. C.S.A. §§ 14302, 14340, but instead through the actions of York County District Attorney David Sunday and former Chief Deputy DA John Hamme, who the plaintiff identifies as "final policymakers." (Doc. 49-1, at). Thus, it appears the plaintiff's proposed amended complaint would impute liability upon York County for "a single decision by municipal

policymakers," Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986), namely the District Attorney's involvement in the decision to prosecute him.

It is true that the Supreme Court in Pembaur established that, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." 475 U.S. at 480. But, "[t]o utilize this approach there must be a basis in the record to establish that the official whose decision is in question had final policy-making authority for the governmental entity with regard to the specific matter at hand." Fogle v. Sokol, No. 2:17CV194, 2018 WL 6831137, at *14 (W.D. Pa. Dec. 28, 2018), aff'd in part, appeal dismissed in part, 957 F.3d 148 (3d Cir. 2020) (citing Pembaur at 480).

As to York County, we acknowledge that the Third Circuit has recognized that district attorneys are "chief law enforcement officer[s] for the county in which [they were] elected," Carter v. City of Phila., 181 F.3d 339, 349 (3d Cir. 1999), and a narrow set of cases has concluded that a "county may be understood to be bound by the conduct of the district attorney for the purposes of a motion to dismiss," where the DA engages in investigative activities which "garner[] constitutional concern." Fogle, 2018 WL 6831137 at *15. Nonetheless, even acknowledging this narrow theory upon which the plaintiff rests his claim against York County, the factual

allegations in his proposed amended complaint are simply too vague and conclusory to justify the reinitiation of claims against this institutional defendant.

At the outset, the plaintiff's proposed claims against Defendants Sunday are conclusory and do not allege the requisite personal involvement of this defendants in his claim. The plaintiff's proposed amended complaint recites no specific factual allegations which tie Defendant Sunday to the decision to prosecute him beyond his position at District Attorney at the time of his prosecution. Moreover, while we are instructed to accept the factual allegations in the complaint as true, "[t]he Supreme Court has held that the determination as to whether a decision maker has authority to make final decisions is a question of state law, not a question of fact for the jury." Washington-Pope v. City of Philadelphia, No. CV 12-4300, 2015 WL 7450522, at *13 (E.D. Pa. Nov. 24, 2015) (citing Pembauer at 483). Here, the plaintiff has not alleged, nor do we conclude, that the Chief Deputy District Attorney, John Hamme, had the authority to make final policy decisions for the York County District Attorney's office.

Similarly, as to the plaintiff's claims against Newberry township, by virtue of the actions of Lt. Ditty, the plaintiff's conclusory statement that Lt. Ditty was "acting as finally policymaker of police operations," simply does not make it so. Here, absent any facts which would support this legal conclusion, we do not accept Sgagias' claim that Lt. Ditty's actions as a police officer constituted an official

14

policy on behalf of the Township which would subject them to legal liability. Absent any other specific allegations showing a policy or practice on behalf of the township, the <u>Monell</u> claims against this institutional defendant are futile.

In sum, none of the new evidence cited by the plaintiff in his motion or proposed amended complaint identifies a specific policy or practice that caused his injury. As we have noted, to survive a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678. Since the plaintiff's proposed amended complaint still does not identify any policy or practice which would impute liability upon York County or Newberry Township for these alleged violations, any amendment of this complaint would be futile as to these defendants.

### 2. *The District Attorney Defendants Are Entitled to Qualified Immunity.*

We also conclude amendment of his complaint would be futile as to his renewed claims against the York County District Attorney, David Sunday, current acting York County DA Tim Barker, and former Chief Deputy DA John Hamme, and ADA Virgina Hobbs.

At the outset, as previously explained to the plaintiff, the United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official

capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir. 1986) (parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

Indeed, it is well-settled that a criminal defendant may not sue prosecutors for the act of filing charges against him since such conduct is cloaked in immunity from civil liability. The immunity conferred upon prosecutors for the quasi-judicial act of filing and bringing criminal charges is also broad and sweeping:

> [T]he Supreme Court [has] held that state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role. This immunity extends to acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and ... presenting the State's case." [The] Court has noted numerous public policy considerations underlying its extension of absolute immunity to prosecutors: [S]uits against prosecutors for initiating and conducting prosecutions "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate"; lawsuits would divert prosecutors' attention and energy away from their important duty of enforcing the criminal law; prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity; and potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." ... [T]here are other checks on prosecutorial misconduct, including the criminal law and

16

professional discipline.

<u>Yarris v. County of Delaware</u>, 465 F.3d 129, 135 (3d Cir. 2006) (citations omitted).

Thus, to the extent that Sgagias' proposed amended complaint again seeks to hold the York County District Attorney personally liable for supervising and ratifying the actions of the police officer defendant, he is immune from personal, individual liability for his actions in bringing this criminal case. This is equally true for the plaintiff's claims against the current acting York County District Attorney, Tim Barker, whose appearance as a defendant is only predicated upon his assumption to the office of acting district attorney during the pendency of the case against Sgagias.[5]

Further, even if Sgagias now alleges these DA defendants, and the new prosecutors he proposes to add to the amended complaint, acted outside of their prosecutorial duties during the investigation of this case and thus are not subject to

---

[5] Moreover, as previously noted, the plaintiff simply has not alleged the type of personal involvement on the part of Sunday or Barker which would give rise to supervisory liability for his constitutional claims since to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902 (3d Cir.1997); <u>see also</u> <u>Maine v.Thiboutot</u>, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir.1997). <u>Fallin v. Mueller</u>, No. 1:15-CV-00248, 2015 WL 4951280, at *10 (M.D. Pa. Aug. 19, 2015)n

absolute immunity, his claims against these defendants falter on another insurmountable legal obstacle: the new evidence which accompanies the plaintiff's proposed amended complaint demonstrates that they are entitled to qualified immunity. The doctrine of qualified immunity shields governmental officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mullenix v. Luna, 577 U.S. 7, 11 (2015). The qualified immunity inquiry has two parts. The first asks whether the plaintiff has alleged sufficient facts to "make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009). The second question is "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." Id. (internal quotation marks omitted). A court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis" to address first "in light of the circumstances of the particular case at hand." Pearson, 555 U.S. at 236, 129 S.Ct. 808.

Against this standard, the plaintiff's proposed amended complaint does not allege sufficient facts to make out a violation of a constitutional right. Indeed, an essential element his malicious prosecution for unauthorized use of a vehicle is the absence of probable cause.[6] Probable cause to arrest exists "whenever reasonably

---

[6] In order to prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) *the proceeding was initiated without probable cause*;

trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). In conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002).

Here, the exhibits attached to the plaintiff's proposed amended complaint indicate that the officers and prosecutors involved in the seizure of the car and subsequent initiation of charges against him had probable cause to believe the Camaro belonged to Oguejiofor. In fact, the title to the Camaro, which the plaintiff purports proves he was the lawful owner of the Camaro at the time the car was seized and he was charged, (Doc. 49-1, ¶ 24, "The police report documents that Lt. Ditty 'contacted Chief Deputy Prosecutor John Hamme' who agreed to treat the Camaro as stolen because it was registered to Oguejiofor, despite title and license plate

---

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)(emphasis added).

evidence showing Plaintiff's ownership."), actually shows the exact opposite – that the title lists Emeka Kinglsey Oguejiofor as the owner of the vehicle. (Doc. 49-5, at 3). Moreover, the affidavit of probable cause notes that the Newberry Township Police Department received a call from Oguejiofor reporting his vehicle stolen, and that the officers' subsequent investigation revealed the car was registered to him. (Doc. 49-8, "After running the VIN I was able to verify that the vehicle was in Mr. Oguejiofor's name."). Given these facts, it cannot be said that the officers "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." Mullenix, 577 U.S. at 11, since the plaintiff could not prove ownership to the vehicle and the facts available to the officers at the time showed Oguejiofor, who reported the vehicle stolen, was the registered owner of the vehicle. This stubborn fact also defeats any unlawful seizure claim which would require Sgagias to show he was the owner of the vehicle which, on the face of the complaint, he simply cannot do. [7]

---

[7] His vague due process claim also fails under the more specific provision rule. The Fourteenth Amendment guarantees that no state shall deprive any person of life, liberty, and property without due process of law. U.S. Const. amend. XIV. However, the more specific provision rule informs us that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)). Here, the plaintiff's Fourteenth Amendment claim arises from the very same conduct upon which he bases his malicious prosecution claims, which fall under the Fourth Amendment's protections.

Moreover, the plaintiff's proposed abuse of process claim also fails. As this court has noted, "a malicious abuse of process claim lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." Zerby v. Waltz, No. 1:16-CV-00383, 2017 WL 386616, at *10 (M.D. Pa. Jan. 27, 2017) (quoting Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989)) (internal quotations omitted). But, "[t]here is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion." Id., (quoting Douris v. Schweiker, 229 F. Supp. 2d 391, 404 (E.D. Pa. 2002), aff'd sub nom. Douris v. Rendell, 100 Fed. Appx. 126 (3d Cir. 2004)). Here, the plaintiff accuses the defendants of "misus[ing] criminal process for the collateral purpose of coercing Plaintiff to abandon his civil claims," (Doc. 49-1, at 16), which indicates that the initiation of the charges against him was malicious, a claim that is encompassed by his fatally flawed malicious prosecution claim, not abuse of process. See Zerby, 2017 WL 386616, at *10 (Holding the plaintiff's allegations that the detective "continued the[] prosecution to save fac[e] and in the hope that Plaintiff would take a plea deal" demonstrated that process was carried out to its authorized conclusion); Williams v. Fedor, 69 F. Supp. 2d 649, 673 (M.D. Pa. 1999)

---

In such instances, the more specific Fourth Amendment claims control, and the general due process claim should be dismissed. See Hitner v. Alshefski, 2020 WL 3288157, at *2 (M.D. Pa. 2020) (denying Fourteenth Amendment Due Process claim based on allegations of First Amendment access-to-courts and retaliation).

("Examples of actions that are recoverable under the abuse of process tort are extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution.").[8] Having found that permitting the plaintiff to file this fourth amended complaint would be futile since his amended claims fail as a matter of law, we will deny his motion to amend. (Doc. 49).

As to his latest motion, with regard to his request to file a fifth amended complaint when this Court has not yet ruled on his proposed fourth amended complaint, the plaintiff has not attached the proposed amended pleading to his motion. Thus, his motion runs afoul of Local Rule 15.1 which requires "the proposed amended pleading must be retyped or reprinted so that it will be complete in itself . . . and shall be filed . . . as an attachment to the motion." L.R. 15.1. Local Rule 15.1 serves an important and salutary purpose by enabling the district court to assess the merits of a motion to amend in the context of the actual proposed amended complaint tendered by the plaintiff. Therefore, a "failure to comply with Local Rule 15.1, standing alone, justifies denial of leave to amend in the exercise of this court's discretion." Turner v. Wetzel, No. 3:13-CV-2680, 2015 WL 5695305, at *3 (M.D. Pa. Sept. 28, 2015) (citing Brooks–McCollum v. Emerald Ridge Serv. Corp., 563 F.

---

[8] The plaintiff's proposed amended complaint also includes a count under 42 U.S.C. § 6972(b) noted as "RCRA/Environmental" but states only that "Plaintiff has issued notice and will pursue this count once the statutory period expires." (Doc. 49-1, at 18). This claim is unexplained and fails to state any claim for relief against any of the named defendants.

App'x. 144, 147 (3d Cir. 2014); Glunk v. Pennsylvania State Bd. of Med., No. 1:14-CV-659, 2015 WL 999135, at *1 (M.D. Pa. Mar. 5, 2015)). Sgagias has not complied with Local Rule 15.1 by providing the court with an actual copy of this proposed fifth amended complaint. This failure to comply with the local rule and submit a proposed amended complaint hobbles our efforts to evaluate the merits of any such supplemental pleading in a way that is prejudicial to the efficient administration of justice. In such circumstances, dismissal of a flawed motion to amend is entirely appropriate, especially where we have reviewed his proposed fourth amended complaint and concluded it is futile. Simply put, consistent with longstanding practice in this court, Sgagias' "failure to submit a draft amended complaint is fatal to a request for leave to amend." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) (citing Ranke v. Sanofi–Synthelabo, Inc., 436 F.3d 197, 206 (3d Cir. 2006); Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157, 161 (3d Cir. 2002); Lake v. Arnold, 232 F.3d 360, 374 (3d Cir. 2000); Kelly v. Del. River Joint Comm'n, 187 F.2d 93, 95 (3d Cir. 1951)).

Moreover, given Sgagias' repeated attempts, and failure, to amend and retool his claims and defendants, in our view the best course of action at this juncture would be for the plaintiff to move forward with the claims which previously survived the defendants' motion to dismiss which, in the Court's view, are the only claims upon which relief can be granted on the facts presented by the plaintiff.

### C. **The Stay Will Be Lifted On the Plaintiff's Remaining Claims**

Finally, although we conclude the plaintiff should not be granted leave to amend his complaint, we previously concluded, in considering the defendants' motions to dismiss, that Sgagias' constitutional claims against Defendant Lieutenant Braxton Ditty and his state law tort claim of conversion against the Lieutenant and the police department, [9] would not be dismissed but would rather be stayed pending the outcome of Sgagias' state criminal case. Sgagias now informs the Court that his state court proceedings have terminated in his favor. Commonwealth v. Konstantinos G. Sgagias, Docket No. CP-67-CR-0000001978-2023 (Pa. Com. Pl. – York Cnty.). Accordingly, we will lift the stay on these proceedings and allow the plaintiff's constitutional and state tort claims against Defendant Ditty and his state tort claim against the police department to proceed to discovery.

---

[9] While the Pennsylvania Political Subdivision Torts Claims Act (PSTCA) grants broad immunity to municipalities for the intentional torts of their employees, 42 Pa. C.S.A. §§ 8541-8564; Dull v. W. Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 754 n.10 (M.D. Pa. 2009), our sister court has held that conversion is not necessarily an intentional tort and, depending on the circumstances, could fall within a Tort Claims Act exception. Conner v. Borough of Eddystone, Penn., No. CIV.A. 14-06934, 2015 WL 1021363, at *6 (E.D. Pa. Mar. 6, 2015) (citing L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc., 777 A.2d 1090, 1095 (Pa. Super. Ct. 2001); 42 Pa.C.S. § 8542(b)(2)). Accordingly, out of an abundance of caution, we declined to outright dismiss this claim against the police department to allow briefing on this issue once the stay is lifted.

An appropriate order follows.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

Date: December 23, 2025