**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KONSTANTINOS SGAGIAS, | : | CIV NO. 1:24-CV-1632 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| NEWBERRY TOWNSHIP POLICE | : | |
| DEPARTMENT, et al. | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

I.    **Statement of Facts and of the Case**

Since initiating this case in September of 2024, the *pro se* plaintiff in this case,

Konstantinos Sgagias, has filed at least four versions of his complaint. Sgagias's

third amended complaint, the operative pleading in this case,[1] brought civil rights

claims under 42 U.S.C. § 1983 against two institutional defendants, York County

and Newberry Township Police Department, as well as the York County District

Attorney, David Sunday, and a Newberry Township police officer, Lieutenant

---

[1] As we noted in previously dismissing some of his claims, the plaintiff's manner of pleading runs afoul of Rule 15(a) which authorizes a party to amend his pleading *once* as a matter of course within 21 days after serving it, or 21 days after service of a dispositive motion or responsive pleading, whichever is earlier, Fed.R.Civ.P. 15(a)(1)(A) and (B), and "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent, or the court's leave," which courts are to freely give "when justice so requires," Fed.R.Civ.P. 15(a)(2). Nonetheless, the defendants have all directed their motions to dismiss at the third amended complaint, (Doc. 22), which we have treated as the operative pleading in this case.

1

Braxton Ditty. (Doc. 22). He also alleged pendant state law claims of conversion, false arrest, and abuse of process against the Newberry Township Police Department and Lieutenant Ditty. (Id.)

On September 12, 2025, on motion by the defendants, we dismissed the plaintiff's claims against York County and York County District Attorney David Sunday as well as the constitutional claims against Newberry Township Police Department. (Doc. 48). Thus, the only remaining claims in this case are constitutional violations of due process, false arrest, and unlawful seizure against Defendant Ditty and state law tort claims against Lt. Ditty and the Newberry Township Police Department.

The factual allegations which form the basis of these claims can be stated as follows: According to the complaint, Sgagias' claims originate from his 2018 purchase of a York County property at a tax sale which had previously operated as an automotive salvage yard. (Doc. 22, ¶¶ 9-10). Prior to the plaintiff taking possession of the property in 2022, Sgagias alleges that the former proprietor of the salvage company, Emeka Kinglsey Oguejiofor, abandoned a 2015 Chevrolet Camaro on the property. (Id. ¶¶ 10-13). Though not entirely clear from the face of the complaint, it appears a legal battle ensued over whether Oguejiofor had abandoned the Camaro and who was its rightful owner. (Id., ¶¶ 13-15). According

2

to the plaintiff, he legally possessed the Camaro pursuant to several Pennsylvania court orders.[2] (Id.)

On September 28, 2022, officers of the Newberry Township Police Department, under the direction of Defendant Lieutenant Braxton Ditty, entered Sgagias' property to conduct a VIN check on the Camaro at which time Sgagias alleges he presented the officers with the court orders proving the vehicle was forfeited and lawfully in his possession. (Id., ¶¶ 16-17). Despite this documentation, the officers removed the vehicle from the plaintiff's property and returned it to Oguejiofor. (Id., ¶ 18). A few months later, on December 27, 2022, Lieutenant Ditty charged the plaintiff with misdemeanor unauthorized use of a vehicle. (Id., ¶ 19).

Despite this case remaining unresolved in state court at the time, in September 2024, Sgagias filed his complaint in federal court, alleging the defendants violated his constitutional rights and committed state law torts when they removed the vehicle from his property and initiated criminal charges against him. After dismissing some of the claims and defendants, we stayed Sgagias's remaining claims pending the resolution of the state criminal case against Sgagias, which the plaintiff informed us terminated in his favor when he was acquitted on November 5, 2025. (Doc. 59;

---

[2] The attached exhibits that the plaintiff purports confirm his claims that he legally possessed the vehicle are enigmatic in nature and, in our view, evidence only that Oguejiofor and Sgagias were in a legal battle over its ownership. None of the documents directly address ownership of, or mention, the Camaro.

Commonwealth v. Konstantinos G. Sgagias, Docket No. CP-67-CR-0000001978-2023 (Pa. Com. Pl. – York Cnty.)). On December 23, 2025, we lifted the stay on the plaintiff's remaining claims against Defendants Ditty and Newberry Township Police Department and the proceedings were reopened. (Doc. 61).

These remaining defendants have now moved to dismiss the plaintiff's third amended complaint, arguing that his claims fail as a matter of law. (Doc. 69). The motion is fully briefed and ripe for disposition. (Docs. 70, 73).

As we have foreshadowed in denying the plaintiff's repeated requests to further amend his complaint, after a review of the pleadings in this case, we find that Defendant Ditty is entitled to qualified immunity against any constitutional claims lodged by the plaintiff. Moreover, we will decline to exercise jurisdiction over any remaining state law claims against Defendants Ditty or the Newberry Township Police Department and dismiss this case.

## II.    Discussion

### A. Motions to Dismiss—Standard of Review.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court

of Appeals for the Third Circuit has aptly noted the evolving standards governing

pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, BU.S.B, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief

may be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.,

20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." Morse v.

Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court

need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not

alleged." Associated Gen. Contractors of Cal. v. California State Council of

Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a

plaintiff must provide some factual grounds for relief which "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

> As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861, 182 L.Ed.2d 644 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S. Ct. at 1947. Second, the court should

identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted.

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is against these legal guideposts that we assess the legal sufficiency of this complaint.

### B. **The Motion to Dismiss Will Be Granted.[3]**

#### 1. **Defendant Ditty is Entitled to Qualified Immunity from the Constitutional Claims.**

The plaintiff alleges Fourth Amendment and due process claims against Defendant Ditty under 42 U.S.C. § 1983, arguing he arrested him and seized the Camaro without probable cause or a warrant. For the defendant's part, Lt. Ditty argues he is immune from liability for these claims under the doctrine of qualified immunity, since it was not clearly established that he would be violating the plaintiff's constitutional rights by relying upon the statements of Oguejiofor that the

---

[3] Before engaging in the qualified immunity analysis which forms the basis of our decision to dismiss the plaintiff's claims, we address the plaintiff's contention throughout his brief in opposition to this motion to dismiss that "the Court already denied dismissal of these claims and found Plaintiff's allegations plausible" and thus they must move forward under the law of the case doctrine. Quite the contrary, our September 12, 2025, memorandum opinion dismissing some of the plaintiff's claims made clear that we abstained from ruling on the merits of these remaining claims under the Younger abstention doctrine because they involved his unresolved state criminal case. (Doc. 47). Thus, while at that juncture in September 2025 we declined to dismiss these claims, we also did not address the merits of his claims against Defendant Ditty or the state law claims. In fact, we foreshadowed our view that these claims were, in fact, likely subject to qualified immunity protections in our decision denying the plaintiff's motion to further amend. (Doc. 60).

car was stolen and the title which purported to show Oguejiofor, and not Sgagias, as the owner of the Camaro. We agree.

The doctrine of qualified immunity shields governmental officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mullenix v. Luna, 577 U.S. 7, 11 (2015). The qualified immunity inquiry has two parts. The first asks whether the plaintiff has alleged sufficient facts to "make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009). The second question is "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." Id. (internal quotation marks omitted). A court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis" to address first "in light of the circumstances of the particular case at hand." Pearson, 555 U.S. at 236, 129 S.Ct. 808.

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." Mullenix, 577 U.S. at 11. To be clearly established, there does not have to be a case that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011)). In determining whether a right is clearly established, courts must not define the right "at a high level of generality." Id. (quoting Al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074.) Rather, the

10

analysis should focus on "whether the violative nature of particular conduct is clearly established." Id. (quoting Al-Kidd, 563 U.S. at 742). On this score, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. It is the plaintiff who bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. See Davis v. Scherer, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."); Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right.").

To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts. Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 449 (3d Cir. 2020) (quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017)). In rare cases, the unlawfulness of a government official's conduct may be established from the obviously unlawful

11

nature of the defendant's conduct "even though existing precedent does not address similar circumstances." Wesby, 138 S. Ct. at 590 (citing Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

Against this standard, the plaintiff's complaint does not allege sufficient facts to make out a violation of a clearly established constitutional right. At the outset, an essential element of his false arrest claim is the absence of probable cause. Kokinda v. Breiner, 557 F. Supp. 2d 581, 592 (M.D. Pa. 2008) (citing Garcia v. County of Bucks, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) ("To maintain his false arrest claims, a plaintiff must show that the arresting officer lacked probable cause to make the arrest"). Probable cause to arrest exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). In conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002).

Here, the exhibits attached to the plaintiff's complaint indicate that Lt. Ditty

12

had probable cause to believe the Camaro belonged to Oguejiofor and Sgagias had committed the crime charged. In fact, the title to the Camaro, which the plaintiff purports proves he was the lawful owner of the Camaro at the time he was charged, (Doc. 49-1, ℙ 24), actually shows the exact opposite – that the title listed Emeka Kinglsey Oguejiofor as the owner of the vehicle.[4] (Doc. 49-5, at 3). Moreover, the affidavit of probable cause notes that the Newberry Township Police Department received a call from Oguejiofor reporting his vehicle stolen, and that the officers' subsequent investigation revealed the car was registered to him. (Doc. 49-8, "After running the VIN I was able to verify that the vehicle was in Mr. Oguejiofor's name.").[5] Given these facts, it cannot be said that the officers "violate[d] clearly

---

[4] We decline the plaintiff's offer to undertake an analysis of vehicle title law which he purports shows this title was defective. As we have noted, we do not rely upon the ultimate conclusion on the heavily disputed and litigated issue of the ownership of the Camaro in concluding the defendant is entitled to qualified immunity but instead conclude it was not clearly established as constitutionally violative for the officer to rely on the car title revealing Oguejiofor's name as the owner combined with his statements to police that the vehicle was stolen in concluding probable cause existed.

[5] Further any substantive due process claim also fails under the more specific provision rule. The Fourteenth Amendment guarantees that no state shall deprive any person of life, liberty, and property without due process of law. U.S. Const. amend. XIV. However, the more specific provision rule informs us that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)). Here, the plaintiff's due process claims arises from the very same conduct upon which he bases his false arrest and unlawful seizure, which fall under

established statutory or constitutional rights of which a reasonable person would have known." <u>Mullenix</u>, 577 U.S. at 11, since the facts available to the officers at the time showed Oguejiofor, who reported the vehicle stolen, was the registered owner of the vehicle. This stubborn fact also entitles the plaintiff to qualified immunity from any unlawful seizure claim since the facts in Lt. Ditty's possession at the time of the seizure reasonably showed Sgagias did not own the vehicle.[6]

Moreover, Sgagias' ultimate  acquittal on state charges is not the relevant inquiry in determining whether the Lt. Ditty had probable cause at the time of the plaintiff's arrest. On this score, while the plaintiff points us to evidence upon which he was acquitted at trial, as we recently explained to the plaintiff:

---

the Fourth Amendment's protections. In such instances, the more specific Fourth Amendment claims control, and the general due process claim should be dismissed. <u>See</u> <u>Hitner v. Alshefski</u>, 2020 WL 3288157, at *2 (M.D. Pa. 2020) (denying Fourteenth Amendment Due Process claim based on allegations of First Amendment access-to-courts and retaliation). To the extent he alleges a procedural due process violation for the seizure of a property interest without due process, this would require that Sgagias had a property interest in the Camaro, which we have concluded he simply has not shown. <u>Keller v. City of Scranton</u>, No. CIV.A. 3:09-CV-2534, 2010 WL 2104665, at *3 (M.D. Pa. May 24, 2010) ("To establish a cause of action for a procedural due process violation, a plaintiff must first prove that a person acting under color of state law deprived him of a protected property interest; and second, he must show that the procedures available to him failed to provide him with due process of law").

[6] It is worth noting that there is still some ambiguity regarding the fate of the Camaro. For example, whether Sgagias ever formally and unequivocally acquired title and possession of the vehicle. Nonetheless, since we find Sgagias has not shown it was clearly established Lt. Ditty could not rely on the registered owner of the vehicle in determining ownership for the purposes of the seizure, those are issues the plaintiff can work out in state court if he wishes to pursue his common law claims.

> "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction. See Michigan v. DeFillippo, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ("We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest.") (citations omitted); Wilson v. Russo, 212 F.3d 781, 789 (3d Cir.2000) (holding that probable cause only requires a "fair probability" that a person committed the relevant crime). An arrest was made with probable cause if "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (citations omitted). In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime. Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir.2003).

Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005). Thus, regardless of the evidence of his acquittal at trial, the defendant was entitled to rely on the vehicle title which was tied to the VIN of the vehicle and showed Oguejiofor's name, and not Sgagias's, over the vague, piecemeal paperwork and regulatory context Sgagias alleges demonstrates he was the legal owner of the vehicle at least for the purposes of probable cause, which requires on a fair probability that a person committed the relevant crime. Wilson, 212 F.3d at 789.

Ultimately, for purposes of qualified immunity, Sgagias has not shown, nor can he show, cases from the Supreme Court, controlling circuit precedent, or "a

15

robust consensus of cases of persuasive authority" from other circuit courts, Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 449 (3d Cir. 2020) (quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017)), that the rights he alleges the defendants violated in arresting him and seizing the Camaro were clearly established.[7] Instead, the defendants have highlighted Third Circuit precedent upholding qualified immunity where officers formed probable cause to arrest based solely upon statements of a party asserting a contrary interest in the property, see Bailey v. Gibbons, 508 F. App'x 136, 138–39 (3d Cir. 2013) ("[E]ven assuming that the Officers mistakenly arrested [the plaintiff] solely on the basis of Gibbons' statements that he was the lawful owner, we cannot say that the Officers' conduct violated clearly established law"), even where the officers who seized personal property were mistaken about its true owner. See Keller v. City of Scranton, No. 3:09-CV-2534, 2013 WL 1681524, at *5 (M.D. Pa. Apr. 17, 2013).[8]

---

[7] While the plaintiff cites to Supreme Court cases, he does not explain how these cases specifically show the defendants violated a clearly established right on the facts of this case.

[8] Further bolstering his entitlement to qualified immunity is the Third Circuit precedent cited by the defendant which supports a presumption of qualified immunity from false arrest charges where a police officer relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law. Kelly v. Borough of Carlisle, 622 F.3d 248, 256 (3d Cir. 2010). It is clear from the face of the complaint and attached exhibits that the decision to charge the plaintiff was made in coordination with the District Attorney's office based upon their investigation into the disputed ownership of the Camaro. Moreover, the plaintiff has not overcome this presumption by showing a reasonable officer would not have relied on the prosecutor's advice. Instead, the plaintiff argues only that Lt. Ditty withheld proof

16

**2. <u>We Decline to Exercise Supplemental Jurisdiction Over the State Law Claims.</u>**

Finally, Sgagias also asserts state law claims of conversion, false arrest, and abuse of process against Newberry Township Police Department and Lt. Ditty. On this score, our disposition of the plaintiff's primary federal legal claims suggests the appropriate course for the court to follow in addressing these ancillary state law claims that the plaintiff may wish to pursue.

In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if- ... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White, No. 05-2150, 2007 WL 3033865, *13 (M.D. Pa. Oct. 15, 2007)(Caputo, J.)(adopting report and recommendation dismissing ancillary malpractice claim against dentist); see

---

of his ownership, which we have concluded was at most equivocal as to what it showed, from the prosecutors.

17

Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008) ("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains. In addition, the district court did not abuse its discretion in declining to address the state law negligence claims. 28 U.S.C. § 1367(c)(3); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir. 1976).")

In short, after the dismissal of Sgagias's federal claims, all that remains of this lawsuit is a state tort case, which involves the resolution of a property and title dispute. The resolution of these state torts is a state matter, governed by state law, and should, therefore, be addressed by the state courts.

Therefore, consistent with the dictates of 28 U.S.C. § 1367(c)(3), which provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if the district court has dismissed all claims over which it has original jurisdiction," we decline to further exercise jurisdiction over these state tort claims, and dismiss them without prejudice to renewal of this action in state court if the plaintiff elects to do so.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Date: May 1, 2026

18